UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

GRISEL ALONSO, as Receiver for
Elm Tree Investment Advisors, LLC,
Elm Tree Investment Fund, LP,                        Case No.
Elm Tree 'e'Conomy Fund, LP, and                     Proceeding Ancillary to
Elm Tree Motion Opportunity, LP,                     No. 15-CV-60082-Dimitrouleas/Snow

       Plaintiff,

v.

JAMES BENVENUTO, an individual,
NGU INVESTORS, LLC, a Florida limited
liability company; JEAN BENVENUTO, an
individual, SURJIT WALIA, an individual,
S.W. EQUITIES CORP., a New York corporation,
TIMOTHY HARTMANN, an individual,
ALEXANDER BUKHSHTABER, an individual,
MVS MEDIA GROUP, LLC, a Florida limited
liability company, HARRY TAWIL, an individual,
EDUARDO DOS SANTOS, an individual,
FILOMENA CALABRIA, an individual,
JOSE ROFFE, an individual, MIREILLE ROFFE,
an individual, SOMESWARI NUKALA, an individual,
YAEL TAPIERO, an individual, LAAS W. TURNBULL,
an individual, OMRI TINTPULVER, an individual,
CONSTANTINO DOS SANTOS, an individual,
ARMAND DELMAR, an individual, AHMAD NAQVI,
an individual, MERCEDES ELMALEH, an individual,
ELIA BLUMIN, an individual, TED GREENWALD,
an individual, ALINA TALSKY, an individual,
ELVIS PERVAN, an individual,
ANGELO ISMIRNIOGLOU, an individual, and
JONATHAN VERK, an individual.

       Defendants.

_____/

## COMPLAINT

     Plaintiff, Grisel Alonso (the "Receiver"), as Receiver for Elm Tree Investment Advisors,

LLC, Elm Tree Investment Fund, LP, Elm Tree 'e'Conomy Fund, LP, and Elm Tree Motion

Opportunity, LP, hereby files this action against Defendants James Benvenuto; NGU Investors,

LLC; Jean Benvenuto; Surjit Walia; S.W. Equities Corp.; Timothy Hartmann; Alexander Bukhshtaber; MVS Media Group, LLC; Harry Tawil; Eduardo Dos Santos; Filomena Calabria; Jose Roffe; Mireille Roffe; Someswari Nukala; Yael Tapiero; Laas W. Turnbull; Omri Tintpulver; Constantino Does Santos; Armand Delmar; Ahmad Naqvi; Mercedes Elmaleh; Elia Blumin; Ted Greenwald; Alina Talsky; Elvis Pervan; Angelo Ismirnioglou; and Jonathan Verk (collectively, "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      On January 15, 2015, the Securities and Exchange Commission ("SEC") commenced an action in the United District Court for the Southern District of Florida, styled *Securities and Exchange Commission v. Frederic Elm f/k/a Frederic Elmaleh, et al.,* Case No. 15-cv-60082 (the "Commission Proceeding").

2.      The SEC's Complaint for Injunctive and Other Relief alleges that between no later than November 2013 to January 2015, Defendants Frederic Elm f/k/a Frederic Elmaleh ("Elm") and Defendants Elm Tree Investment Advisors, LLC ("ETIA"), Elm Tree Investment Fund, LP ("ETIF"), Elm Tree 'e'Conomy Fund, LP ("ETEF"), and Elm Tree Motion Opportunity, LP ("ETMO") (collectively, the "Receivership Entities") engaged in a fraudulent securities "Ponzi" scheme through the offer and sale of fraudulent investments that raised more than $17 million from more than 50 investors (the "Fraudulent Scheme").

3.      Elm was the ultimate owner of the Receivership Entities and had the ability or ultimate right to control their operations.  The Receivership Entities were used to perpetrate the Fraudulent Scheme by acting as conduits for funneling investor money to or from investors and to loot the Receivership Entities for the benefit of Elm and his family members.

4.      The Commission Proceeding alleges that Elm misappropriated at least $2 million in investor funds to pay for personal items and expenses and by making improper payments including to his wife, Amanda Elm f/k/a Amanda Elmaleh.

5.      On January 16, 2015, Judge William Dimitrouleas of the United States District Court for the Southern District of Florida entered an order in the Commission Proceeding (the "Receivership Order") appointing Grisel Alonso as Receiver for the Receivership Entities. A true and correct copy of the Receivership Order is attached hereto as **Exhibit A**.

6.      The Receiver was appointed pursuant to the Court's inherent equity powers to carry out the purposes of the Commission Proceeding, which was brought pursuant to the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934.

7.      Pursuant to the Receivership Order, the Receiver is ordered to, among other things, "[t]ake immediate possession of all property, assets and estates of every kind of [the Receivership Entities] … and institute such actions and legal proceedings … as the Receiver deems necessary … against any transfers of money or other proceeds directly or indirectly traceable from investors in [the Receivership Entities]".

8.      This action by the Receiver against Defendants is brought pursuant to the Receivership Order, which charged the Receiver with marshaling assets of the Receivership Estate for the benefit of defrauded investors.

## JURISDICTION AND VENUE

9.      This Court has supplemental jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1367(a) because it is an ancillary action to the Commission Proceeding, over which this Court has federal question jurisdiction.  This complaint is brought to accomplish the objectives of the Receivership Order and to seek recovery of funds that Defendants received resulting from the Fraudulent Scheme outlined in the Commission Proceeding.  Therefore, supplemental jurisdiction is proper in the Southern District of Florida because the claims raised in this Complaint are so related to the claims involved in the Commission Proceeding that they form part of the same case or controversy under Article III of the United States Constitution.

10.     The Court has personal jurisdiction over Defendants pursuant to the Securities and Exchange Act, 15 U.S.C. §78aa, because this action arises from the Commission Proceeding, which provides for nationwide service of process under the Federal Securities Laws, and because Defendants have sufficient minimum contacts with the United States to satisfy the Fifth Amendment's due process requirements.  Alternatively, the Court has personal jurisdiction over Defendants pursuant to Section 48.193, Florida Statutes, because: (i) Defendants voluntarily participated and engaged in a business venture in this State, which is the Fraudulent Scheme from which the Receiver's claims arise; and (ii) Defendants have sufficient minimum contacts with the State of Florida to satisfy due process requirements, such that the exercise or personal jurisdiction over them is fair and just.

11.     Venue in this District and Division is proper because a substantial part of the events giving rise to the claims occurred in this District, because this action is related to the Commission Proceeding pending in this District, and because the Receiver was appointed by the Court in this District.

## PARTIES

12.     Plaintiff Grisel Alonso is the duly appointed and acting Receiver for the Receivership Entities.

13.     Defendant James Benvenuto is an individual who, upon information and belief, resides in Broward County, Florida.

14.     Defendant NGU Investors, LLC is a Florida limited liability company with its principal place of business in Coconut Creek, Broward County, Florida.

15.     Defendant Jean Benvenuto is an individual who, upon information and belief, resides in Broward County, Florida.

16.     Defendant Surjit Walia is an individual who, upon information and belief, resides in New York County, New York.

17.     Defendant S.W. Equities Corp. is a New York corporation with its principal place of business in South Ozone Park, Queens County, New York.

18.     Defendant Timothy Hartmann is an individual who, upon information and belief, resides in Miami Beach, Miami-Dade County, Florida.

19.     Defendant Alexander Bukhshtaber is an individual who, upon information and belief, resides in Broward County, Florida.

20.     Defendant MVS Media Group, LLC is a Florida limited liability company with its principal place of business in Hallandale, Broward County, Florida.

21.     Defendant Harry Tawil is an individual who, upon information and belief, resides in Brooklyn, Kings County, New York.

22.     Defendant Eduardo Dos Santos is an individual who, upon information and belief, resides in Scarborough, Ontario, Canada.

23.     Defendant Filomena Calabria is an individual who, upon information and belief, resides in Brampton, Ontario, Canada.

24.     Defendant Jose Roffe is an individual who, upon information and belief, resides in Toronto, Ontario, Canada.

4

25.     Defendant Mireille Roffe is an individual who, upon information and belief, resides in Toronto, Ontario, Canada.

26.     Defendant Someswari Nukala is an individual who, upon information and belief, resides in Mississauga, Ontario, Canada.

27.     Defendant Yael Tapiero is an individual who, upon information and belief, resides in Thornhill, Ontario, Canada.

28.     Defendant Laas W. Turnbull is an individual who, upon information and belief, resides in Toronto, Ontario, Canada.

29.     Defendant Omri Tintpulver is an individual who, upon information and belief, resides in Toronto, Ontario, Canada.

30.     Defendant Constantino Dos Santos is an individual who, upon information and belief, resides in Thornhill, Ontario, Canada.

31.     Defendant Armand Delmar is an individual who, upon information and belief, resides in Thornhill, Ontario, Canada.

32.     Defendant Ahmad Naqvi is an individual who, upon information and belief, resides in Toronto, Ontario, Canada.

33.     Defendant Mercedes Elmaleh is an individual who, upon information and belief, resides in Thornhill, Ontario, Canada.

34.     Defendant Elia Blumin is an individual who, upon information and belief, resides in Richmond Hill, Ontario, Canada.

35.     Defendant Ted Greenwald is an individual who, upon information and belief, resides in Thornhill, Ontario, Canada.

36.     Defendant Alina Talsky is an individual who, upon information and belief, resides in Thornhill, Ontario, Canada.

37.     Defendant Elvis Pervan is an individual who, upon information and belief, resides in Toronto, Ontario, Canada.

38.     Defendant Angelo Ismirnioglou is an individual who, upon information and belief, resides in San Juan Capistrano, Orange County, California.

39.     Defendant Jonathan Verk is an individual who, upon information and belief, resides in Los Angeles, Orange County, California.

## FACTS

**A. The Fraudulent Scheme**

40.     Elm, through the sale of securities in ETIF, ETEF, and ETMO (collectively, the "Elm Tree Funds"), raised at least $17 million from more than 50 investors.

41.     Elm was the founder and managing director of ETIA and the general partner and manager of the Elm Tree Funds.

42.     The offering documents for the Elm Tree Funds provided that Elm and ETIA would charge a 2% annual management fee, but would not receive any additional fees unless and until the Elm Tree Funds made a profit.  But Elm and ETIA invested only a portion of the investor funds raised.

43.     At no point did Elm or the Elm Tree Funds earn a profit that would have entitled them to additional fees under the offering documents.  Instead, Elm and ETIA used the majority of the funds to pay back investors in Ponzi-like fashion and for Elm's own personal use.

44.     Elm misappropriated at least $2 million in investor funds to pay for personal items and expenses such as a home, high-end furnishings, and other personal items such as automobiles, jewelry, and daily living expenses.

45.     Investors sent their investment funds to Elm by wire transfer or by mailing a check.  Elm initially deposited investor funds into bank accounts held by ETIA, the Elm Tree Funds, or his own personal bank account.  Elm then transferred the money back and forth between the various accounts and commingled money invested in one of the Elm Tree Funds with money invested in the others.

46.     The Elm Tree Funds did not generate a profit.  While Elm invested a portion of investor funds, he used the vast majority of the funds to repay other investors in a Ponzi scheme, and to fund his own personal expenses and the expenses of his wife, Amanda Elm.

47.     Elm defrauded investors through his control of the Receivership Entities.

48.     A large number of investors in the Elm Tree Funds received no distributions from the Elm Tree Funds of purported trading or other investment profits, or they received such distributions in an amount that was less than the amount they invested.  As such, each of those investors suffered a net loss.

B.  **The Transfers to Defendants**

49.      From November 26, 2012 to December 31, 2014, millions of dollars received from investors in the Elm Tree Funds were deposited in the Receivership Entities' accounts in connection with the Fraudulent Scheme.  Elm commingled the funds received from investors between and among the accounts for the Receivership Entities and Elm's personal account, and used the investors' funds to pay third parties, including Defendants.

50.      All of the money that Elm and the Receivership Entities wrongfully caused to be transferred to Defendants was diverted and misappropriated by Elm in furtherance of the Fraudulent Scheme.  Thus, all of the money transferred or paid to Defendants was improperly diverted assets of one or more of the Elm Tree Funds and thus the Receivership Estate.

51.      To allow Defendants to keep the funds transferred by Elm and the Receivership Entities would be inequitable and unjust, including to the investors of the Elm Tree Funds.

52.      All conditions precedent to filing this action have been performed, occurred, or have been waived.

1.  **The Transfers to James Benvenuto**

53.      From February 13, 2014 to December 30, 2014, James Benvenuto received the following transfers from ETIA and the Elms: (a) on or about February 13, 2014, the Elms transferred $25,000.00 via check to James Benvenuto; (b) on or about April 25, 2014, ETIA transferred $5,000.00 via check to James Benvenuto; (c) on or about September 8, 2014, ETIA transferred $8.000.00 via check to James Benvenuto; (d) on or about November 14, 2014, the Elms transferred $5,000.00 via check to James Benvenuto; and (e) on or about December 30, 2014, ETIA transferred $3,000.00 via check to James Benvenuto.

54.      In all, James Benvenuto received transfers of funds in the amount of $46,000.00 (collectively, the "Benvenuto Transfers"), all of which were derived from the fraud perpetrated upon investors by Elm through his use of the Receivership Entities.

55.      The Receivership Entities did not receive reasonably equivalent value in exchange for the Benvenuto Transfers, which were made to the detriment of the Receivership Estate.

2.  **The Transfers to NGU Investors, LLC**

56.      From February 24, 2014 to March 10, 2014, NGU Investors, LLC ("NGU") received the following transfers from ETIA and the Elms: (a) on or about February 24, 2014, ETIA transferred $20,000.00 via check to NGU; (b) on or about March 3, 2014, the Elms

transferred $25,000.00 via check to NGU; and (c) on or about March 10, 2014, ETIA transferred $30,000.00 via check to NGU.

57.     In all, NGU received transfers of funds in the amount of $75,000.00 (collectively, the "NGU Transfers"), all of which were derived from the fraud perpetrated upon investors by Elm through his use of the Receivership Entities.

58.     The Receivership Entities did not receive reasonably equivalent value in exchange for the NGU Transfers, which were made to the detriment of the Receivership Estate.

**3.     The Transfers to Jean Benvenuto**

59.     From June 24, 2014 to December 23, 2014, ETIA and the Elms transferred the following funds to Jean Benvenuto: (a) on or about June 24, 2014, ETIA transferred $2,000.00 via check to Jean Benvenuto; (b) on or about July 21, 2014, ETIA transferred $2,000.00 via check to Jean Benvenuto; (c) on or about August 29, 2014, ETIA transferred $500.00 via check to Jean Benvenuto; (d) on or about October 2, 2014, ETIA transferred $500.00 via check to Jean Benvenuto; (e) on or about November 3, 2014, ETIA transferred $500.00 via check to Jean Benvenuto; (f) on or about November 26, 2014, the Elms transferred $500.00 via check to Jean Benvenuto; and (g) on or about December 23, 2014, ETIA transferred $1,000.00 via check to Jean Benvenuto.

60.     In all, Jean Benvenuto received transfers of funds in the amount of $7,000.00 (collectively, the "Jean Benvenuto Transfers"), all of which were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

61.     The Receivership Entities did not receive reasonably equivalent value in exchange for the Jean Benvenuto Transfers, which were made to the detriment of the Receivership Estate.

**4.     The Transfer to Surjit Walia**

62.     On or about February 24, 2014. ETIA transferred funds in the amount of $2,050.00 to Surjit Walia (the "Walia Transfer"), which funds were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

63.     The Receivership Entities did not receive reasonably equivalent value in exchange for the Walia Transfer, which was made to the detriment of the Receivership Estate.

**5.     The Transfers to S.W. Equities Corp.**

64.     From March 4, 2014 to January 2, 2015, the Receivership Entities and Elms transferred funds to S.W. Equities Corp. ("S.W. Equities") as follows:

| Transferor | Date | Description | Amount |
|---|---|---|---|
| Elm Tree Investment Advisors, LLC | 3/4/14 | Check | $3,000.00 |
| Elm Tree Investment Advisors, LLC | 3/14/14 | Check | $3,489.31 |
| Amanda R. Elmaleh and Frederic Elmaleh | 3/31/14 | Check | $40.00 |
| Elm Tree Investment Advisors, LLC | 4/2/14 | Check | $6,143.00 |
| Elm Tree E Conomy Fund, LP | 4/8/14 | Check | $36,000.00 |
| Elm Tree Investment Advisors, LLC | 4/11/14 | Check | $3,000.00 |
| Elm Tree Investment Advisors, LLC | 4/25/14 | Check | $3,000.00 |
| Elm Tree Investment Advisors, LLC | 4/25/14 | Check | $3,699.00 |
| Elm Tree Investment Advisors, LLC | 5/9/14 | Check | $8,414.00 |
| Elm Tree Investment Advisors, LLC | 5/22/14 | Check | $3,000.00 |
| Elm Tree Investment Advisors, LLC | 6/6/14 | Check | $3,000.00 |
| Elm Tree Motion Opportunity, LP | 6/24/14 | Check | $3,000.00 |
| Elm Tree Investment Advisors, LLC | 7/7/14 | Check | $3,000.00 |
| Elm Tree Investment Advisors, LLC | 7/8/14 | Check | $4,825.00 |
| Elm Tree Investment Advisors, LLC | 7/18/14 | Check | $3,000.00 |
| Elm Tree Investment Advisors, LLC | 8/1/14 | Check | $3,000.00 |
| Elm Tree Motion Opportunity, LP | 8/15/14 | Check | $3,000.00 |
| Elm Tree Investment Advisors, LLC | 8/29/14 | Check | $3,000.00 |
| Elm Tree Motion Opportunity, LP | 9/12/14 | Check | $2,500.00 |
| Elm Tree Motion Opportunity, LP | 9/26/14 | Check | $3,000.00 |
| Elm Tree Motion Opportunity, LP | 10/14/14 | Check | $3,000.00 |
| Elm Tree Motion Opportunity, LP | 10/24/14 | Check | $3,000.00 |
| Elm Tree Motion Opportunity, LP | 11/10/14 | Check | $3,000.00 |
| Elm Tree Motion Opportunity, LP | 11/21/14 | Check | $3,000.00 |
| Elm Tree Motion Opportunity, LP | 12/5/14 | Check | $2,500.00 |
| Elm Tree Motion Opportunity, LP | 12/19/14 | Check | $2,000.00 |
| Elm Tree Motion Opportunity, LP | 1/2/15 | Check | $3,000.00 |
| | | Total | $120,610.31 |

65.     In all, S.W. Equities received transfers of funds in the amount of $120,610.31 (collectively, the "S.W. Equities Transfers"), all of which were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

66.     The Receivership Entities did not receive reasonably equivalent value in exchange for the S.W. Equities Transfers, which were made to the detriment of the Receivership Estate.

**6.  The Transfers to Timothy Hartmann**

67.     From December 3, 2013 to August 25, 2014, the Elms and ETIA transferred the following funds to Timothy Hartmann ("Hartmann"): (a) On or about December 3, 2013, the Elms transferred $10,000.00 by check to Hartmann; (b) on or about January 21, 2014, ETIA

transferred $4,000.00 by check to Hartmann; (c) on or about March 6, 2014, ETIA transferred $5,000.00 by check to Hartmann; (d) on or about May 9, 2014, ETIA transferred $10,000.00 by check to Hartmann; (e) on or about June 30, 2014, ETIA transferred $5,000.00 by check to Hartmann; and (f) on or about August 25, 2014, ETIA transferred $10,000.00 by check to Hartmann.

68.     In all, Hartmann received transfers of funds in the amount of $44,000.00 (collectively, the "Hartmann Transfers"), all of which were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

69.     The Receivership Entities did not receive reasonably equivalent value in exchange for the Hartmann Transfers, which were made to the detriment of the Receivership Estate.

**7.  The Transfers to and for the Benefit of Alexander Bukhshtaber**

70.     On or about April 9, 2014, ETIA transferred funds in the amount of $15,000.00 to Alexander Bukhshtaber ("Bukhshtaber").

71.     In addition, during the period from December 2, 2013 to January 5, 2015, the Elms and Receivership Entities transferred funds in the amount of $26,600.00 to Marina Kagan for Bukhshtaber's benefit.

72.     In total, Bukhshtaber received a total of $41,600.00 paid to him or for his benefit from Elm and the Receivership Entities (collectively, the "Bukhshtaber Transfers"), all of which were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

73.     The Receivership Entities did not receive reasonably equivalent value in exchange for the Bukhshtaber Transfers, which were made to the detriment of the Receivership Estate.

**8.  The Transfer for the Benefit of MVS Media Group, LLC**

74.     On August 1, 2014, ETIA transferred funds in the amount of $16,000.00 to The Box Advertising, Inc. for the benefit of MVS Media Group, LLC ("MVS Media").

75.     The funds transferred to The Box Advertising for the benefit of MVS Media (the "MVS Media Transfer") were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

76.     The Receivership Entities did not receive reasonably equivalent value in exchange for the MVS Media Transfer, which was made to the detriment of the Receivership Estate.

### 9.  The Transfers to Harry Tawil

77.     On October 9, 2014 and December 23, 2014, ETIA transferred funds in the amount of $52,500.00 and $139,295.00, respectively, to Harry Tawil ("Tawil").

78.     The funds transferred to Tawil in the total amount of $191,795.00 (the "Tawil Transfers") were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

79.     The Receivership Entities did not receive reasonably equivalent value in exchange for the Tawil Transfers, which were made to the detriment of the Receivership Estate.

### 10. The Transfer to Eduardo Dos Santos

80.     On January 8, 2014, ETIA transferred funds in the amount of $126,017.42 via wire to Eduardo Dos Santos.

81.     The funds transferred to Eduardo Dos Santos in the total amount of $126,017.42 were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

82.     The Receivership Entities did not receive reasonably equivalent value in exchange for the transfer to Eduardo Dos Santos, which was made to the detriment of the Receivership Estate.

### 11. The Transfers to Filomena Calabria

83.     During the period from December 18, 2013 to October 7, 2014, Receivership Entities transferred funds in the amount of $130,000.00 to Filomena Calabria ("Calabria") as follows: (1) on December 18, 2013, ETEF transferred funds in the amount of $65,000.00 via wire to Calabria; (2) on October 7, 2014, ETIF transferred funds in the amount of $65,000.00 via cashier's check to Calabria.

84.     On or about March 5, 2014, Calabria transferred funds in the amount of $49,990.00 via wire to ETEF.

85.     The funds transferred to Calabria from the Receivership Entities were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

86.     The Receivership Entities did not receive reasonably equivalent value in exchange for the transfers to Calabria in the amount of $80,010.00, which were made to the detriment of the Receivership Estate.

**12. The Transfers to Jose Roffe and Mireille Roffe**

87.    On or about January 10, 2014, Jose Roffe and Mireille Roffe (collectively, the "Roffes") transferred funds in the amount of $99,835.00 to ETEF.

88.    During the period from July 18, 2014 to October 8, 2014, ETIA transferred funds in the amount of $102,998.67 to the Roffes as follows: (1) on July 18, 2014, ETIA transferred fund in the amount of $44,498.67 via check to the Roffes; (2) on July 22, 2014, ETIA transferred funds in the amount of $8,500.00 via check to the Roffes; and (3) on October 8, 2014, ETIA transferred funds in the amount of $50,000.00 via check to the Roffes.

89.    The funds transferred to the Roffes from ETIA were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

90.    The Receivership Entities did not receive reasonably equivalent value in exchange for the transfers to the Roffes in the amount of $3,163.67, which were made to the detriment of the Receivership Estate.

**13. The Transfers to Someswari Nukala**

91.    On April 4, 2014, Someswari Nukala ("Nukala") transferred funds in the amount of $79,980.00 via wire to ETEF and on July 7, 2014, Nukala transferred funds in the amount of $39,985.00 via wire to ETMO.

92.    From July 21, 2014 to October 29, 2014, Receivership Entities transferred funds in the amount of $136,875.00 to Nukala as follows: (1) on July 21, 2014, ETIA transferred funds in the amount of $6,750.00 via wire to Nukala; (2) on September 23, 2014, ETMO transferred funds in the amount of $2,125.00 via wire to Nukala; (3) on October 9, 2014, ETIF transferred funds in the amount of $88,000.00 via cashier's check to Nukala; (4) on October 29, 2014, ETIF transferred funds in the amount of $40,000.00 via cashier's check to Nukala (collectively, the "Nukala Transfers").

93.    The funds transferred to Nukala from the Receivership Entities were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

94.    The Receivership Entities did not receive reasonably equivalent value in exchange for the transfers to Nukala in the amount of $16,910.00, which were made to the detriment of the Receivership Estate.

**14. The Transfers to Yael Tapiero**

95.    On January 21, 2014, Yael Tapiero ("Tapiero") transferred funds in the amount of $96,746.00 via wire to ETEF.

96.    From September 30, 2014 to October 7, 2014, ETIF transferred funds in the amount of $106,420.60 to Tapiero as follows: (1) on September 30, 2014, ETIF transferred funds in the amount of $96,746.00 via cashier's check to Tapiero; and (2) on October 7, 2014, ETIF transferred funds in the amount of $9,674.60 via cashier's check to Tapiero (collectively, the "Tapiero Transfers").

97.    The funds transferred to Tapiero from ETIF were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

98.    The Receivership Entities did not receive reasonably equivalent value in exchange for the transfers to Tapiero in the amount of $9,674.60, which were made to the detriment of the Receivership Estate.

**15. The Transfer to Laas W. Turnbull**

99.    On February 20, 2014, Laas W. Turnbull ("Turnbull") transferred funds in the amount of $49,990.00 via wire to ETEF.

100.    On October 7, 2014, ETIF transferred funds in the amount of $55,000.00 via cashier's check to Turnbull (the "Turnbull Transfer").

101.    The funds transferred to Turnbull from ETIF were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

102.    The Receivership Entities did not receive reasonably equivalent value in exchange for the transfer to Turnbull in the amount of $5,010.00, which were made to the detriment of the Receivership Estate.

**16. The Transfer to Omri Tintpulver**

103.    On January 13, 2014, Omri Tintpulver ("Tintpulver") transferred funds in the amount of $50,000.00 via wire to ETEF.

104.    On October 7, 2014, ETIF transferred funds in the amount of $55,000.00 via cashier's check to Tintpulver (the "Tintpulver Transfer").

105.    The funds transferred to Tintpulver from ETIF were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

106.     The Receivership Entities did not receive reasonably equivalent value in exchange for the transfer to Tintpulver in the amount of $5,000.00, which were made to the detriment of the Receivership Estate.

**17. The Transfer to Constantino Dos Santos**

107.     On December 19, 2013, Constantino Dos Santos transferred funds in the amount of $29,980.00 via wire to ETEF.

108.     On October 9, 2014, ETIF transferred funds in the amount of $39,000.00 via cashier's check to Constantino Dos Santos.

109.     The funds transferred to Constantino Dos Santos from ETIF were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

110.     The Receivership Entities did not receive reasonably equivalent value in exchange for the transfer to Constantino Dos Santos in the amount of $9,020.00, which were made to the detriment of the Receivership Estate.

**18. The Transfer to Armand Delmar**

111.     On July 21, 2014, Armand Delmar ("Delmar") transferred funds in the amount of $29,985.00 via wire to ETMO.

112.     On October 29, 2014, ETIF transferred funds in the amount of $36,000.00 via cashier's check to Delmar.

113.     The funds transferred to Delmar from ETIF were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

114.     The Receivership Entities did not receive reasonably equivalent value in exchange for the transfer to Delmar in the amount of $6,015.00, which were made to the detriment of the Receivership Estate.

**19. The Transfers to Ahmad Naqvi**

115.     During the period from September 9, 2014 to November 20, 2014, ETIA transferred funds in the total amount of $46,785.00 to Ahmad Naqvi ("Naqvi") as follows: (1) On September 9, 2014, ETIA transferred funds in the amount of $20,000.00 via check to Naqvi; (2) on September 24, 2014, ETIA transferred funds in the amount of $10,350.00 via check to Naqvi; (3) on October 10, 2014, ETIA transferred funds in the amount of $4,350.00 via check to Naqvi; (4) on October 10, 2014, ETIA transferred funds in the amount of $5,200.00 via check to

Naqvi; and (5) on November 20, 2014, ETIA transferred funds in the amount of $6,885.00 via check to Naqvi (collectively, the "Naqvi Transfers").

116.   The funds transferred to Naqvi from ETIA were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

117.   The Receivership Entities did not receive reasonably equivalent value in exchange for the transfer to Naqvi in the amount of $46,785.00, which were made to the detriment of the Receivership Estate.

**20. The Transfers to Mercedes Elmaleh**

118.   During the period from December 3, 2013 through April 28, the Elms and ETIA transferred funds in the total amount of $43,275.87 to Mercedes Elmaleh as follows: (1) On December 3, 2013, the Elms transferred funds in the amount of $33,775.87 via wire to Mercedes Elmaleh; (2) on December 23, 2013, the Elms transferred funds in the amount of $5,000.00 via wire to Mercedes Elmaleh; (3) on April 25, 2014, ETIA transferred funds in the amount of $3,000.00 via check to Mercedes Elmaleh; and (4) on April 28, 2014, ETIA transferred funds in the amount of $1,500.00 via check to Mercedes Elmaleh (collectively, the "Mercedes Elmaleh Transfers").

119.   The funds transferred to Mercedes Elmaleh from the Elms and ETIA were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

120.   The Receivership Entities did not receive reasonably equivalent value in exchange for the transfer to Mercedes Elmaleh in the amount of $43,275.87, which were made to the detriment of the Receivership Estate.

**21. The Transfers to Elia Blumin**

121.   During the period from November 27, 2013 to September 15, 2014, the Elms and ETIA transferred funds in the total amount of $91,891.84 to Elia Blumin ("Blumin") as follows: (1) on November 27, 2013, the Elms transferred funds in the amount of $38,802.28 via wire to Blumin; (2) on December 10, 2013, the Elms transferred funds in the amount of $16,663.56 via wire to Blumin; and (3) on September 15, 2014, ETIA transferred funds in the amount of $36,426.00 via wire to Blumin (collectively, the "Blumin Transfers").

122.     The funds transferred to Blumin from the Elms and ETIA were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

123.     The Receivership Entities did not receive reasonably equivalent value in exchange for the transfer to Blumin in the amount of $91,891.84, which were made to the detriment of the Receivership Estate.

**22. The Transfers to Ted Greenwald**

124.     During the period from July 1, 2014 to August 21, 2014, ETMO transferred funds in the amount of $110,000.00 to Ted Greenwald ("Greenwald") as follows: (1) July 1, 2014, ETMO transferred funds in the amount of $55,000.00 via wire to Greenwald; and (2) on August 21, 2014, ETMO transferred funds in the amount of $55,000.00 via wire to Greenwald (collectively, the "Greenwald Transfers").

125.     The funds transferred to Greenwald from ETMO were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

126.     The Receivership Entities did not receive reasonably equivalent value in exchange for the Greenwald Transfers, which were made to the detriment of the Receivership Estate.

**23. The Transfers to Alina Talsky**

127.     During the period from July 3, 2014 to July 15, 2014, the Receivership Entities transferred funds in the amount of $20,000.00 to Alina Talsky ("Talsky") as follows: (1) on July 3, 2014, ETMO transferred funds in the amount of $5,000.00 via check to Talsky;  (2) on July 8, 2014, ETIA transferred funds in the amount of $5,000.00 via check to Talsky; (3) on July 10, 2014, ETMO transferred funds in the amount of $5,000.00 via check to Talsky; and (4) on July 15, 2014, ETIA transferred funds in the amount of $5,000.00 via check to Talsky (collectively, the "Talsky Transfers").

128.     The funds transferred to Talsky from the Receivership Entities  were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

129.     The Receivership Entities did not receive reasonably equivalent value in exchange for the Talsky Transfers, which were made to the detriment of the Receivership Estate.

**24. The Transfers to Elvis Pervan**

130.    During the period from February 11, 2014 to March 17, 2014, the Elms transferred funds in the amount of $23,265.52 to Elvis Pervan ("Pervan") as follows: (1) on February 11, 2014, the Elms transferred funds in the amount of $13,966.32 via wire to Pervan; and (2) on March 17, 2014, the Elms transferred funds in the amount of $9,299.20 via wire to Pervan (collectively, the "Pervan Transfers").

131.    The funds transferred to Pervan from the Elms were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

132.    The Receivership Entities did not receive reasonably equivalent value in exchange for the Pervan Transfers, which were made to the detriment of the Receivership Estate.

**25. The Transfers to Angelo Ismirnioglou**

133.    During the period from December 3, 2013 to August 25, 2014, the Elms and ETIA transferred funds in the amount of $53,800.00 to Angelo Ismirnioglou ("Ismirnioglou") as follows: (1) on December 3, 2013, the Elms transferred funds in the amount of $5,000.00 via check to Ismirnioglou; (2) on December 16, 2013, the Elms transferred funds in the amount of $10,000.00 via check to Ismirnioglou; (3) on January 10, 2014, the Elms transferred funds in the amount of $1,700.00 via check to Ismirnioglou; (4) on February 6, 2014, the Elms transferred funds in the amount of $1,700.00 via check to Ismirnioglou; (5) on March 6, 2014, ETIA transferred funds in the amount of $1,700.00 via check to Ismirnioglou; (6) on April 9, 2014, ETIA transferred funds in the amount of $2,000.00 via check to Ismirnioglou; (7) on May 2, 2014, ETIA transferred funds in the amount of $1,700.00 via check to Ismirnioglou; and (8) on August 25, 2014, ETIA transferred funds in the amount of $30,000.00 via check to Ismirnioglou (collectively, the "Ismirnioglou Transfers").

134.    The funds transferred to Ismirnioglou Transfers from the Elms and ETIA were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

135.    The Receivership Entities did not receive reasonably equivalent value in exchange for the Ismirnioglou Transfers, which were made to the detriment of the Receivership Estate.

**26. The Transfers to Jonathan Verk**

136.    On November 26, 2013, Jonathan Verk ("Verk") transferred funds in the amount of $100,000.00 via wire to ETEF.

137.    On December 12, 2013, Verk transferred funds in the amount of $50,000.00 via wire to ETEF.

138.    On October 9, 2014, ETIA transferred funds in the amount of $157,528.76 via check to Verk.

139.    The funds transferred to Verk from ETIA were derived from the Fraudulent Scheme perpetrated upon investors by Elm through his use of the Receivership Entities.

140.    The Receivership Entities did not receive reasonably equivalent value in exchange for the transfer to Verk in the amount of $7,528.76, which was made to the detriment of the Receivership Estate.

## COUNT 1 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against James Benvenuto)

141.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

142.    This is a claim to avoid and recover fraudulent transfers to James Benvenuto pursuant to Section 726.105, Florida Statutes.

143.    Elm and ETIA transferred a total of $46,000.00 to James Benvenuto through the Benvenuto Transfers.

144.    By Elm intentionally and wrongfully causing the transfer to James Benvenuto of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from James Benvenuto.

145.    In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

146.    The Benvenuto Transfers were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused to be made to James Benvenuto because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

147.    The transfers to James Benvenuto were fraudulent under Florida Statutes § 726.105(1)(a) because Elm and ETIA made the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

148.    Those transfers were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

149.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to James Benvenuto, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused James Benvenuto and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

150.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

151.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the Benvenuto Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant James Benvenuto for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 2 - Fraudulent Transfer under Section 726.106, Florida Statutes
**(Against James Benvenuto)**

152.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

153.    This is a claim to avoid and recover fraudulent transfers to James Benvenuto pursuant to Section 726.106, Florida Statutes.

154.    Elm and ETIA transferred a total of $46,000.00 to James Benvenuto.

155.    By Elm intentionally and wrongfully causing the transfer to James Benvenuto of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from James Benvenuto.

156.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

157.    The transfers to James Benvenuto were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfers and Elm and the Receivership Entities were insolvent at all relevant times.

158.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to James Benvenuto, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused James Benvenuto and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

159.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

160.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the Benvenuto Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant James Benvenuto all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 3 - Unjust Enrichment
### (Against James Benvenuto)

161.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

162.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 1 and 2 do not provide an adequate remedy at law.

163.    Through the Benvenuto Transfers, the Elm Tree Funds and Receivership Entities conferred a substantial benefit on James Benvenuto.

164.    James Benvenuto knowingly and voluntarily accepted and retained a benefit in the form of the Benvenuto Transfers.

165.    James Benvenuto's retention of this benefit is inequitable and unjust because, *inter alia*, James Benvenuto failed to provide anything of value to the Receivership Entities in exchange for the benefit, the Benvenuto Transfers were made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the Benvenuto Transfers dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

166.    Allowing James Benvenuto to retain the Benvenuto Transfers would unjustly enrich James Benvenuto to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

167.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant James Benvenuto for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 4 - Fraudulent Transfer under Section 726.105, Florida Statutes
**(Against NGU Investors, LLC)**

168.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

169.    This is a claim to avoid and recover fraudulent transfers to NGU pursuant to Section 726.105, Florida Statutes.

170.    Elm and ETIA transferred a total of $75,000.00 to NGU through the NGU Transfers.

171.    By Elm intentionally and wrongfully causing the transfer to NGU of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from NGU.

172.    In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

173.     The NGU Transfers were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused to be made to NGU because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

174.     The transfers to NGU were fraudulent under Florida Statutes § 726.105(1)(a) because Elm and ETIA made the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

175.     Those transfers were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

176.     On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to NGU, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused NGU and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

177.     On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

178.     The Receivership Estate has been damaged and diminished as a direct and proximate result of the NGU Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant NGU Investors, LLC, for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

**COUNT 5 - Fraudulent Transfer under Section 726.106, Florida Statutes**
**(Against NGU Investors, LLC)**

179.   Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

180.   This is a claim to avoid and recover fraudulent transfers to NGU pursuant to Section 726.106, Florida Statutes.

181.   Elm and ETIA transferred a total of $75,000.00 to NGU.

182.   By Elm intentionally and wrongfully causing the transfer to NGU of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from NGU.

183.   In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

184.   The transfers to NGU were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfers and Elm and the Receivership Entities were insolvent at all relevant times.

185.   On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to NGU, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused NGU and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

186.   On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

187.   The Receivership Estate has been damaged and diminished as a direct and proximate result of the Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant NGU Financial, LLC, all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 6 - Unjust Enrichment
### (Against NGU Investors, LLC)

188.   Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

189.   This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 4 and 5 do not provide an adequate remedy at law.

190.   Through the NGU Transfers, the Elm Tree Funds and Receivership Entities conferred a substantial benefit on NGU.

191.   NGU knowingly and voluntarily accepted and retained a benefit in the form of the NGU Transfers.

192.   NGU's retention of this benefit is inequitable and unjust because, *inter alia*, NGU failed to provide anything of value to the Receivership Entities in exchange for the benefit, the NGU Transfers were made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the NGU Transfers dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

193.   Allowing NGU to retain the NGU Transfers would unjustly enrich NGU to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

194.   Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant NGU Investors, LLC for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 7 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Jean Benvenuto)

195.   Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

196.   This is a claim to avoid and recover fraudulent transfers to Jean Benvenuto pursuant to Section 726.105, Florida Statutes.

197.   Elm and ETIA transferred a total of $7,000.00 to Jean Benvenuto through the Jean Benvenuto Transfers.

198.    By Elm intentionally and wrongfully causing the transfer to Jean Benvenuto of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Jean Benvenuto.

199.    In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

200.    The Jean Benvenuto Transfers were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.   The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused to be made to Jean Benvenuto because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

201.    The transfers to Jean Benvenuto were fraudulent under Florida Statutes § 726.105(1)(a) because Elm and ETIA made the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

202.    Those transfers were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

203.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Jean Benvenuto, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Jean Benvenuto and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

204.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

205.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the Jean Benvenuto Transfers.

25

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Jean Benvenuto for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 8 - Fraudulent Transfer under Section 726.106, Florida Statutes
### (Against Jean Benvenuto)

206.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

207.    This is a claim to avoid and recover fraudulent transfers to Jean Benvenuto pursuant to Section 726.106, Florida Statutes.

208.    Elm and ETIA transferred a total of $7,000.00 to Jean Benvenuto.

209.    By Elm intentionally and wrongfully causing the transfer to Jean Benvenuto of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Jean Benvenuto.

210.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

211.    The transfers to Jean Benvenuto were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfers and Elm and the Receivership Entities were insolvent at all relevant times.

212.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Jean Benvenuto, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Jean Benvenuto and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

213.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

214.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the Jean Benvenuto Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Jean Benvenuto all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 9 - Unjust Enrichment
### (Against Jean Benvenuto)

215.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

216.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 7 and 8 do not provide an adequate remedy at law.

217.    Through the Jean Benvenuto Transfers, the Elm Tree Funds and Receivership Entities conferred a substantial benefit on Jean Benvenuto.

218.    Jean Benvenuto knowingly and voluntarily accepted and retained a benefit in the form of the Jean Benvenuto Transfers.

219.    Jean Benvenuto's retention of this benefit is inequitable and unjust because, *inter alia*, Jean Benvenuto failed to provide anything of value to the Receivership Entities in exchange for the benefit, the Jean Benvenuto Transfers were made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the Jean Benvenuto Transfers dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

220.    Allowing Jean Benvenuto to retain the Jean Benvenuto Transfers would unjustly enrich Jean Benvenuto to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

221.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Jean Benvenuto for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 10 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Surjit Walia)

222.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

223.     This is a claim to avoid and recover fraudulent transfers to Walia pursuant to Section 726.105, Florida Statutes.

224.     Elm and ETIA transferred a total of $2,050.00 to Walia through the Walia Transfer.

225.     By Elm intentionally and wrongfully causing the transfer to Walia of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Walia.

226.     In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

227.     The Walia Transfer was inherently fraudulent because it was made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused to be made to Walia because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

228.     The transfer to Walia was fraudulent under Florida Statutes § 726.105(1)(a) because ETIA made the transfer with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

229.     The transfer was also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

230.     On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Walia, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Walia and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

231.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

232.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the Walia Transfer.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Surjit Walia for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 11 - Fraudulent Transfer under Section 726.106, Florida Statutes
**(Against Surjit Walia)**

233.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

234.    This is a claim to avoid and recover fraudulent transfers to Walia pursuant to Section 726.106, Florida Statutes.

235.    Elm and ETIA transferred a total of $2,050.00 to Walia.

236.    By Elm intentionally and wrongfully causing the transfer to Walia of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Walia.

237.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

238.    The transfer to Walia was fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

239.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Walia, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Walia and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

240.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

241.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the Walia Transfer.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Surjit Walia all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 12 - Unjust Enrichment
### (Against Surjit Walia)

242.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

243.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 10 and 11 do not provide an adequate remedy at law.

244.    Through the Walia Transfer, the Elm Tree Funds and Receivership Entities conferred a substantial benefit on Walia.

245.    Walia knowingly and voluntarily accepted and retained a benefit in the form of the Walia Transfer.

246.    Walia's retention of this benefit is inequitable and unjust because, *inter alia*, Walia failed to provide anything of value to the Receivership Entities in exchange for the benefit, the Walia Transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the Walia Transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

247.    Allowing Walia to retain the Walia Transfer would unjustly enrich Walia to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

248.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Surjit Walia for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

**COUNT 13 - Fraudulent Transfer under Section 726.105, Florida Statutes**
**(Against S.W. Equities Corp.)**

249.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

250.    This is a claim to avoid and recover fraudulent transfers to S.W. Equities pursuant to Section 726.105, Florida Statutes.

251.    Elm and Receivership Entities transferred a total of $120,610.31 to S.W. Equities Corp. through the S.W. Equities Transfers.

252.    By Elm intentionally and wrongfully causing the transfer to S.W. Equities of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from S.W. Equities.

253.    In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

254.    The S.W. Equities Transfers were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused to be made to S.W. Equities because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

255.    The transfers to S.W. Equities were fraudulent under Florida Statutes § 726.105(1)(a) because ETIA made the transfer with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

256.    The transfers were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

31

257.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to S.W. Equities, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused S.W. Equities and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

258.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

259.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the S.W. Equities Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant S.W. Equities Corp. for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 14 - Fraudulent Transfer under Section 726.106, Florida Statutes
### (Against S.W. Equities Corp.)

260.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

261.    This is a claim to avoid and recover fraudulent transfers to S.W. Equities pursuant to Section 726.106, Florida Statutes.

262.    Elm and ETIA transferred a total of $120,610.31 to S.W. Equities.

263.    By Elm intentionally and wrongfully causing the transfers to S.W. Equities of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from S.W. Equities.

264.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

265.    The transfers to S.W. Equities were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

266.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to S.W. Equities, directly or indirectly, the Receiver is entitled to avoid and

recover transfers equal to the amount of the transfers that Elm caused S.W. Equities and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

267.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

268.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the S.W. Equities Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant S.W. Equities Corp. all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 15 - Unjust Enrichment
### (Against S.W. Equities Corp.)

269.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

270.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 13 and 14 do not provide an adequate remedy at law.

271.    Through the S.W. Equities Transfers, the Elm Tree Funds and Receivership Entities conferred a substantial benefit on S.W. Equities.

272.    S.W. Equities knowingly and voluntarily accepted and retained a benefit in the form of the S.W. Equities Transfers.

273.    S.W. Equities retention of this benefit is inequitable and unjust because, *inter alia*, S.W. Equities failed to provide anything of value to the Receivership Entities in exchange for the benefit, the S.W. Equities Transfers were made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the S.W. Equities Transfers dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

274.    Allowing S.W. Equities to retain the S.W. Equities Transfers would unjustly enrich S.W. Equities to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

275.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant S.W. Equities Corp. for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 16 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Timothy Hartmann)

276.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

277.    This is a claim to avoid and recover fraudulent transfers to Hartmann pursuant to Section 726.105, Florida Statutes.

278.    Elm and ETIA transferred a total of $44,000.00 to Hartmann through the Hartmann Transfers.

279.    By Elm intentionally and wrongfully causing the transfer to Hartmann of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Hartmann.

280.    In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

281.    The Hartmann Transfers were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused to be made to Hartmann because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

282.    The transfers to Hartmann were fraudulent under Florida Statutes § 726.105(1)(a) because ETIA made the transfer with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

283.    The transfers were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or

believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

284.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Hartmann, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Hartmann and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

285.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

286.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the Hartmann Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Timothy Hartmann for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 17 - Fraudulent Transfer under Section 726.106, Florida Statutes
**(Against Timothy Hartmann)**

287.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

288.    This is a claim to avoid and recover fraudulent transfers to Hartmann pursuant to Section 726.106, Florida Statutes.

289.    Elm and ETIA transferred a total of $44,000.00 to Hartmann.

290.    By Elm intentionally and wrongfully causing the transfers to Hartmann of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Hartmann.

291.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

292.    The transfers to Hartmann were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

293.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Hartmann, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Hartmann and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

294.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

295.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the Hartmann Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Timothy Hartmann all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 18 - Unjust Enrichment
### (Against Timothy Hartmann)

296.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

297.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 16 and 17 do not provide an adequate remedy at law.

298.    Through the Hartmann Transfers, the Elm Tree Funds and Receivership Entities conferred a substantial benefit on Hartmann.

299.    Hartmann knowingly and voluntarily accepted and retained a benefit in the form of the Hartmann.

300.    Hartmann's retention of this benefit is inequitable and unjust because, *inter alia*, Hartmann failed to provide anything of value to the Receivership Entities in exchange for the benefit, the Hartmann Transfers were made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the Hartmann Transfers dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

301.    Allowing Hartmann to retain the Hartmann Transfers would unjustly enrich Hartmann to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

302.     Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Timothy Hartmann for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 19 - Fraudulent Transfer under Section 726.105, Florida Statutes
#### (Against Alexander Bukhshtaber)

303.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

304.     This is a claim to avoid and recover fraudulent transfers to and for the benefit of Bukhshtaber pursuant to Section 726.105, Florida Statutes.

305.     Elm and ETIA transferred a total of $41,600.00 to and for the benefit of Bukhshtaber through the Bukhshtaber [I think this should be Bukhshtaber?]Transfers.

306.     By Elm intentionally and wrongfully causing the transfer funds to and for the benefit of Bukhshtaber of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Bukhshtaber.

307.     In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

308.     The Bukhshtaber Transfers were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused to be made to Bukhshtaber because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

309.     The Bukhshtaber Transfers were fraudulent under Florida Statutes § 726.105(1)(a) because ETIA made the transfer with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

310.     The Bukhshtaber Transfers were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership

Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

311.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Bukhshtaber, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Bukhshtaber and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

312.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

313.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the Bukhshtaber Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Alexander Bukhshtaber for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 20 - Fraudulent Transfer under Section 726.106, Florida Statutes
**(Against Alexander Bukhshtaber)**

314.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

315.    This is a claim to avoid and recover fraudulent transfers to and for the benefit of Bukhshtaber pursuant to Section 726.106, Florida Statutes.

316.    Elm and ETIA transferred a total of $41,600.00 to and for the benefit of Bukhshtaber.

317.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Bukhshtaber of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Bukhshtaber.

318.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

319.    The Bukhshtaber Transfers were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

320.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Bukhshtaber, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Bukhshtaber and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

321.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

322.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the Bukhshtaber Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Alexander Bukhshtaber all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 21 - Unjust Enrichment
### (Against Alexander Bukhshtaber)

323.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

324.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 19 and 20 do not provide an adequate remedy at law.

325.    Through the Bukhshtaber Transfers, the Elm Tree Funds and Receivership Entities conferred a substantial benefit on Bukhshtaber.

326.    Bukhshtaber knowingly and voluntarily accepted and retained a benefit in the form of the Bukhshtaber Transfers.

327.    Bukhshtaber's retention of this benefit is inequitable and unjust because, *inter alia*, Bukhshtaber failed to provide anything of value to the Receivership Entities in exchange for the benefit, the Bukhshtaber Transfers were made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the Bukhshtaber Transfers dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

328.    Allowing Bukhshtaber to retain the Bukhshtaber Transfers would unjustly enrich Bukhshtaber to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

329.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Alexander Bukhshtaber for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 22 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against MVS Media Group, LLC)

330.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

331.    This is a claim to avoid and recover fraudulent transfers to and for the benefit of MVS Media pursuant to Section 726.105, Florida Statutes.

332.    ETIA transferred a total of $16,000.00 to The Box Advertising, Inc. for the benefit of MVS Media.

333.    By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of MVS Media of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from MVS Media.

334.    In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

335.    The MVS Media Transfer was inherently fraudulent because it was made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to The Box Advertising, Inc. for the benefit of MVS Media because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

336.    The MVS Media Transfer was fraudulent under Florida Statutes § 726.105(1)(a) because ETIA made the transfer with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

40

337.    The MVS Media Transfer was also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

338.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to MVS Media, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused MVS Media and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

339.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

340.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the MVS Media Transfer.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant MVS Media Group, LLC for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 23 - Fraudulent Transfer under Section 726.106, Florida Statutes
(Against MVS Media Group, LLC)

341.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

342.    This is a claim to avoid and recover fraudulent transfers to The Box Advertising, Inc. for the benefit of MVS Media pursuant to Section 726.106, Florida Statutes.

343.    ETIA transferred a total of $16,000.00 to The Box Advertising, Inc. for the benefit of MVS Media.

344.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of MVS Media of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from MVS Media.

345.     In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

346.     The MVS Media Transfer was fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

347.     On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to MVS Media, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused MVS Media and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

348.     On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

349.     The Receivership Estate has been damaged and diminished as a direct and proximate result of the MVS Media Transfer.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant MVS Media Group, LLC all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 24 - Unjust Enrichment
### (Against MVS Media Group, LLC)

350.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

351.     This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 22 and 23 do not provide an adequate remedy at law.

352.     Through the MVS Media Transfer, the Elm Tree Funds and Receivership Entities conferred a substantial benefit on MVS Media.

353.     MVS Media knowingly and voluntarily accepted and retained a benefit in the form of the MVS Media Transfer.

354.     MVS Media's retention of this benefit is inequitable and unjust because, *inter alia*, MVS Media failed to provide anything of value to the Receivership Entities in exchange for

the benefit, the MVS Media Transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the MVS Media Transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

355.     Allowing MVS Media to retain the MVS Media Transfer would unjustly enrich MVS Media to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

356.     Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant MVS Media Group, LLC for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 25 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Harry Tawil)

357.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

358.     This is a claim to avoid and recover fraudulent transfers to and for the benefit of Harry Tawil pursuant to Section 726.105, Florida Statutes.

359.     ETIA transferred a total of $191,795.00 to Harry Tawil.

360.     By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Tawil of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Tawil.

361.     In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

362.     The Tawil Transfers were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Tawil because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

363.     The Tawil Transfers were fraudulent under Florida Statutes § 726.105(1)(a) because ETIA made the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

364.     The Tawil Transfers were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

365.     On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Tawil, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Tawil and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

366.     On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

367.     The Receivership Estate has been damaged and diminished as a direct and proximate result of the Tawil Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Harry Tawil for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 26 - Fraudulent Transfer under Section 726.106, Florida Statutes
### (Against Harry Tawil)

368.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

369.     This is a claim to avoid and recover fraudulent transfers to Harry Tawil pursuant to Section 726.106, Florida Statutes.

370.     ETIA transferred a total of $191,795.00 to Tawil.

371.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Tawil of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Tawil.

372.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

373.    The Tawil Transfers were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

374.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Tawil, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Tawil and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

375.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

376.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the Tawil Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Harry Tawil all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 27 - Unjust Enrichment
### (Against Harry Tawil)

377.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

378.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 25 and 26 do not provide an adequate remedy at law.

379.    Through the Tawil Transfers, the Elm Tree Funds and Receivership Entities conferred a substantial benefit on Tawil.

380.    Tawil knowingly and voluntarily accepted and retained a benefit in the form of the Tawil Transfers.

381.    Tawil's retention of this benefit is inequitable and unjust because, *inter alia*, Tawil failed to provide anything of value to the Receivership Entities in exchange for the benefit, the Tawil Transfers were made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the Tawil Transfers dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

382.    Allowing Tawil to retain the Tawil Transfers would unjustly enrich Tawil to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

383.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Harry Tawil for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 28 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Eduardo Dos Santos)

384.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

385.    This is a claim to avoid and recover fraudulent transfers to and for the benefit of Eduardo Dos Santos pursuant to Section 726.105, Florida Statutes.

386.    ETIA transferred a total of $126,017.42 to Eduardo Dos Santos.

387.    By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Eduardo Dos Santos of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Eduardo Dos Santos.

388.    In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

389.    The transfer to Eduardo Dos Santos was inherently fraudulent because it was made as part of Elm's Fraudulent Scheme.   The Receiver, as the representative of the

Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Eduardo Dos Santos because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

390.    The transfer to Eduardo Dos Santos was fraudulent under Florida Statutes § 726.105(1)(a) because ETIA made the transfer with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

391.    The transfer to Eduardo Dos Santos was also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

392.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Eduardo Dos Santos, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Eduardo Dos Santos and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

393.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

394.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfer to Eduardo Dos Santos.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Eduardo Dos Santos for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 29 - Fraudulent Transfer under Section 726.106, Florida Statutes
**(Against Eduardo Dos Santos)**

395.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

396.    This is a claim to avoid and recover fraudulent transfers to Eduardo Dos Santos pursuant to Section 726.106, Florida Statutes.

397.    ETIA transferred a total of $126,017.42 to Eduardo Dos Santos.

398.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Eduardo Dos Santos of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Eduardo Dos Santos.

399.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

400.    The transfer to Eduardo Dos Santos was fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

401.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Eduardo Dos Santos, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Eduardo Dos Santos and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

402.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

403.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfer to Eduardo Dos Santos.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Eduardo Dos Santos all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 30 - Unjust Enrichment
### (Against Eduardo Dos Santos)

404.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

405.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 28 and 29 do not provide an adequate remedy at law.

406.    Through the transfer to Eduardo Dos Santos, ETIA conferred a substantial benefit on Eduardo Dos Santos.

407.    Eduardo Dos Santos knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

408.    Eduardo Dos Santos's retention of this benefit is inequitable and unjust because, *inter alia*, Eduardo Dos Santos failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

409.    Allowing Eduardo Dos Santos to retain the transfer would unjustly enrich Eduardo Dos Santos to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

410.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Eduardo Dos Santos all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 31 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Filomena Calabria)

411.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

412.    This is a claim to avoid and recover fraudulent transfers to and for the benefit of Filomena Calabria pursuant to Section 726.105, Florida Statutes.

413.    ETEF and ETIF, Receivership Entities, transferred a total of $130,000.00 to Calabria, who transferred a total of $49,990.00 to ETEF.

414.    By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Calabria of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Calabria.

415.    In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

416.    The transfers to Calabria were inherently fraudulent because it was made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Calabria because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

417.    The transfers to Calabria were fraudulent under Florida Statutes § 726.105(1)(a) because ETIA made the transfer with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

418.    The transfers to Calabria was also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

419.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Calabria, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Calabria and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

420.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

421.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Calabria.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Filomena Calabria for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 32 - Fraudulent Transfer under Section 726.106, Florida Statutes
**(Against Filomena Calabria)**

422.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

423.    This is a claim to avoid and recover fraudulent transfers to Filomena Calabria pursuant to Section 726.106, Florida Statutes.

424.    ETEF and ETIF, Receivership Entities, transferred a total of $130,000.00 to Calabria, who transferred a total of $49,990.00 to ETEF.

425.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Calabria of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Calabria.

426.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

427.    The transfers to Calabria were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

428.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Calabria, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Calabria and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

429.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

430.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfer to Calabria.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Filomena Calabria all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 33 - Unjust Enrichment
### (Against Filomena Calabria)

431.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

432.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 31 and 32 do not provide an adequate remedy at law.

433.    Through the transfers to Calabria, the Receivership Entities conferred a substantial benefit on Calabria.

434.    Calabria knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

435.    Calabria's retention of this benefit is inequitable and unjust because, *inter alia*, Calabria failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

436.    Allowing Calabria to retain the transfer would unjustly enrich Calabria to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

437.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Filomena Calabria all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 34 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Jose Roffe and Mireille Roffe)

438.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

439.    This is a claim to avoid and recover fraudulent transfers to and for the benefit of the Roffes pursuant to Section 726.105, Florida Statutes.

440.    ETIA transferred a total of $102,998.67 to the Roffes, who transferred a total of $99,835.00 to ETEF.

441.    By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of the Roffes of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from the Roffes.

442.    In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

443.    The transfers to the Roffes were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to the Roffes because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

444.    The transfers to the Roffes were fraudulent under Florida Statutes § 726.105(1)(a) because ETIA made the transfer with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

445.    The transfers to the Roffes were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

446.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to the Roffes, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused the Roffes and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

447.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

448.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to the Roffes.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendants Jose and Mireille Roffe for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 35 - Fraudulent Transfer under Section 726.106, Florida Statutes
### (Against Jose Roffe and Mireille Roffe)

449.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

450.    This is a claim to avoid and recover fraudulent transfers to the Roffes pursuant to Section 726.106, Florida Statutes.

451.    ETIA transferred a total of $102,998.67 to the Roffes, who transferred a total of $99,835.00 to ETEF.

452.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Calabria of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from the Roffes.

453.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

454.    The transfers to the Roffes were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

455.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to the Roffes, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Calabria and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

456.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

457.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to the Roffes.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendants Jose and Mireille Roffe all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 36 - Unjust Enrichment
### (Against Jose Roffe and Mireille Roffe)

458.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

459.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 34 and 35 do not provide an adequate remedy at law.

460.    Through the transfers to the Roffes, the Receivership Entities conferred a substantial benefit on the Roffes.

461.    The Roffes knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

462.    The Roffes' retention of this benefit is inequitable and unjust because, *inter alia*, the Roffes failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

463.    Allowing the Roffes to retain the transfer would unjustly enrich Calabria to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

464.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendants Jose and Mireille Roffe all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 37 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Someswari Nukala)

465.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

466.    This is a claim to avoid and recover fraudulent transfers to and for the benefit of Nukala pursuant to Section 726.105, Florida Statutes.

467.    Receivership Entities transferred a total of $136,875.00 to Nukala, who transferred a total of $119,965.00 to ETEF and ETMO.

468.    By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Nukala of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Nukala.

469.    In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

470.    The transfers to Nukala were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Nukala because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

471.    The transfers to Nukala were fraudulent under Florida Statutes § 726.105(1)(a) because ETIA made the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

472.    The transfers to Nukala were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

473.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Nukala, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Nukala and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

474.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

475.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Nukala.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Someswari Nulaka for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

**COUNT 38 - Fraudulent Transfer under Section 726.106, Florida Statutes**
**(Against Someswari Nukala)**

476.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

477.    This is a claim to avoid and recover fraudulent transfers to Nukala pursuant to Section 726.106, Florida Statutes.

478.    Receivership Entities transferred a total of $136,875.00 to Nukala, who transferred a total of $119,965.00 to ETEF and ETMO.

479.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Nukala of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Nukala.

480.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

481.    The transfers to Nukala were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

482.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Nukala, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Calabria and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

483.     On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

484.     The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Nukala.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Someswari Nukala all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 39 - Unjust Enrichment
### (Against Someswari Nukala)

485.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

486.     This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 37 and 38 do not provide an adequate remedy at law.

487.     Through the transfers to Nukala, the Receivership Entities conferred a substantial benefit on Nukala.

488.     Nukala knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

489.     Nukala's retention of this benefit is inequitable and unjust because, *inter alia*, Nukala failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

490.     Allowing Nukala to retain the transfer would unjustly enrich Nukala to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

491.     Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Someswari Nukala all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 40 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Yael Tapiero)

492.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

493.     This is a claim to avoid and recover fraudulent transfers to and for the benefit of Tapiero pursuant to Section 726.105, Florida Statutes.

494.     Receivership Entities transferred a total of $106,420.60 to Tapiero, who transferred a total of $96,746.00 to ETEF.

495.     By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Tapiero of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Tapiero.

496.     In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

497.     The transfers to Tapiero were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Tapiero because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

498.     The transfers to Tapiero were fraudulent under Florida Statutes § 726.105(1)(a) because ETIA made the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

499.     The transfers to Tapiero were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

500.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Tapiero, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Tapiero and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

501.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

502.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Tapiero.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Yael Tapiero for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 41 - Fraudulent Transfer under Section 726.106, Florida Statutes
#### (Against Yael Tapiero)

503.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

504.    This is a claim to avoid and recover fraudulent transfers to Tapiero pursuant to Section 726.106, Florida Statutes.

505.    Receivership Entities transferred a total of $106,420.60 to Tapiero, who transferred a total of $96,746.00 to ETEF.

506.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Tapiero of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Tapiero.

507.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

508.    The transfers to Tapiero were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

509.   On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Tapiero, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Calabria and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

510.   On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

511.   The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Tapiero.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Yael Tapiero all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 42 - Unjust Enrichment
### (Against Yael Tapiero)

512.   Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

513.   This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 40 and 41 do not provide an adequate remedy at law.

514.   Through the transfers to Tapiero, the Receivership Entities conferred a substantial benefit on Tapiero.

515.   Tapiero knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

516.   Tapiero's retention of this benefit is inequitable and unjust because, *inter alia*, Tapiero failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

517.   Allowing Tapiero to retain the transfer would unjustly enrich Tapiero to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

518.     Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Yael Tapiero all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 43 - Fraudulent Transfer under Section 726.105, Florida Statutes
#### (Against Laas W. Turnbull)

519.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

520.     This is a claim to avoid and recover fraudulent transfers to and for the benefit of Turnbull pursuant to Section 726.105, Florida Statutes.

521.     ETIF transferred a total of $55,000.00 to Turnbull, who transferred a total of $49,990.00 to ETEF.

522.     By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Turnbull of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Turnbull.

523.     In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

524.     The transfer to Turnbull was inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Turnbull because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

525.     The transfer to Turnbull was fraudulent under Florida Statutes § 726.105(1)(a) because ETIA made the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

526.     The transfer to Turnbull was also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership

Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

527.     On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Turnbull, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Turnbull and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

528.     On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

529.     The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Turnbull.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Laas W. Turnbull for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 44 - Fraudulent Transfer under Section 726.106, Florida Statutes
**(Against Laas W. Turnbull)**

530.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

531.     This is a claim to avoid and recover fraudulent transfers to Turnbull pursuant to Section 726.106, Florida Statutes.

532.     ETIF transferred a total of $55,000.00 to Turnbull, who transferred a total of $49,990.00 to ETEF.

533.     By Elm intentionally and wrongfully causing the transfers to and for the benefit of Turnbull of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Turnbull.

534.     In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

535.     The transfer to Turnbull was fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

536.     On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Turnbull, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Calabria and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

537.     On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

538.     The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfer to Turnbull.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Laas W. Turnbull all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 45 - Unjust Enrichment
**(Against Laas W. Turnbull)**

539.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

540.     This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 43 and 44 do not provide an adequate remedy at law.

541.     Through the transfers to Turnbull, the Receivership Entities conferred a substantial benefit on Turnbull.

542.     Turnbull knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

543.     Turnbull's retention of this benefit is inequitable and unjust because, *inter alia*, Turnbull failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

544.     Allowing Turnbull to retain the transfer would unjustly enrich Turnbull to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

545.     Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Laas W. Turnbull all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 46 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Omri Tintpulver)

546.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

547.     This is a claim to avoid and recover fraudulent transfers to and for the benefit of Tintpulver pursuant to Section 726.105, Florida Statutes.

548.     ETIF transferred a total of $55,000.00 to Tintpulver, who transferred a total of $50,000.00 to ETEF.

549.     By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Tintpulver of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Turnbull.

550.     In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

551.     The transfer to Tintpulver was inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Tintpulver because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

552.     The transfer to Tintpulver was fraudulent under Florida Statutes § 726.105(1)(a) because ETIF made the transfer with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

553.     The transfer to Tintpulver was also fraudulent under Florida Statutes §
726.105(1)(b) because the transfers were made without the Receivership Entities receiving a
reasonably equivalent value in exchange for the transfers and because Elm and the Receivership
Entities (1) were engaged or were about to engage in a business or transaction for which their
remaining assets were unreasonably small in relation to the business or transaction; or (2)
intended to incur, or believed or reasonably should have believed they would incur, debts beyond
their ability to pay as they became due.

554.     On behalf of the Elm Tree Funds and Receivership Entities from which money
was transferred to Tintpulver, the Receiver is entitled to avoid and recover transfers equal to the
amount of the transfers that Elm caused Tintpulver and to any other pertinent remedy, including
those available under Florida Statutes § 726.108.

555.     On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is
entitled to avoid and recover those transfers because (i) money was commingled among the
Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

556.     The Receivership Estate has been damaged and diminished as a direct and
proximate result of the transfers to Tintpulver.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a
judgment against Defendant Omri Tintpulver for all damages incurred including, but not limited
to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 47 - Fraudulent Transfer under Section 726.106, Florida Statutes
### (Against Omri Tintpulver)

557.     Plaintiff re-alleges and incorporates by reference the allegations contained in
paragraphs 1-140, as if fully stated herein.

558.     This is a claim to avoid and recover fraudulent transfers to Tintpulver pursuant to
Section 726.106, Florida Statutes.

559.     ETIF transferred a total of $55,000.00 to Tintpulver, who transferred a total of
$50,000.00 to ETEF.

560.     By Elm intentionally and wrongfully causing the transfers to and for the benefit of
Tintpulver of investors' commingled principal investment money, the Receiver and Receivership
Entities have a right to repayment of those funds from Turnbull.

66

561.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

562.    The transfer to Tintpulver was fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

563.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Tintpulver, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Tintpulver and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

564.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

565.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfer to Tintpulver.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Omri Tintpulver all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 48 - Unjust Enrichment
### (Against Omri Tintpulver)

566.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

567.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 46 and 47 do not provide an adequate remedy at law.

568.    Through the transfers to Tintpulver, the Receivership Entities conferred a substantial benefit on Tintpulver.

569.    Tintpulver knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

570.    Tintpulver's retention of this benefit is inequitable and unjust because, *inter alia*, Tintpulver failed to provide anything of value to the Receivership Entities in exchange for the

benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

571.     Allowing Tintpulver to retain the transfer would unjustly enrich Tintpulver to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

572.     Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Omri Tintpulver all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 49 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Constantino Dos Santos)

573.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

574.     This is a claim to avoid and recover fraudulent transfers to and for the benefit of Constantino Dos Santos pursuant to Section 726.105, Florida Statutes.

575.     ETIA transferred a total of $39,000.00 to Constantino Dos Santos, who transferred a total of $29,980.00 to ETEF.

576.     By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Constantino Dos Santos of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Constantino Dos Santos.

577.     In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

578.     The transfer to Constantino Dos Santos was inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Constantino Dos Santos because the money given to Elm

and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

579.    The transfer to Constantino Dos Santos was fraudulent under Florida Statutes § 726.105(1)(a) because ETIF made the transfer with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

580.    The transfer to Constantino Dos Santos was also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

581.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Constantino Dos Santos, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Constantino Dos Santos and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

582.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

583.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Constantino Dos Santos.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Constantino Dos Santos for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 50 - Fraudulent Transfer under Section 726.106, Florida Statutes
**(Against Constantino Dos Santos)**

584.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

585.    This is a claim to avoid and recover fraudulent transfers to Constantino Dos Santos pursuant to Section 726.106, Florida Statutes.

586.    ETIA transferred a total of $39,000.00 to Constantino Dos Santos, who transferred a total of $29,980.00 to ETEF.

587.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Constantino Dos Santos of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Constantino Dos Santos.

588.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

589.    The transfer to Constantino Dos Santos was fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

590.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Constantino Dos Santos, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Constantino Dos Santos and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

591.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

592.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfer to Constantino Dos Santos.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Constantino Dos Santos all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 51 - Unjust Enrichment
**(Against Constantino Dos Santos)**

593.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

594.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 49 and 50 do not provide an adequate remedy at law.

595.    Through the transfers to Constantino Dos Santos, the Receivership Entities conferred a substantial benefit on Constantino Dos Santos.

596.    Constantino Dos Santos knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

597.    Constantino Dos Santos's retention of this benefit is inequitable and unjust because, *inter alia*, Constantino Dos Santos failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

598.    Allowing Constantino Dos Santos to retain the transfer would unjustly enrich Constantino Dos Santos to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

599.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Constantino Dos Santos all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 52 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Armand Delmar)

600.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

601.    This is a claim to avoid and recover fraudulent transfers to and for the benefit of Delmar pursuant to Section 726.105, Florida Statutes.

602.    ETIF transferred a total of $36,000.00 to Delmar, who transferred a total of $29,985.00 to ETMO.

603.    By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Delmar of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Delmar.

604.    In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

605.    The transfer to Delmar was inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Delmar because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

606.    The transfer to Delmar was fraudulent under Florida Statutes § 726.105(1)(a) because ETIF made the transfer with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

607.    The transfer to Delmar was also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

608.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Delmar, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Delmar and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

609.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

610.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Delmar.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Armand Delmar for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 53 - Fraudulent Transfer under Section 726.106, Florida Statutes
### (Against Armand Delmar)

611.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

612.    This is a claim to avoid and recover fraudulent transfers to Constantino Dos Delmar pursuant to Section 726.106, Florida Statutes.

613.    ETIF transferred a total of $36,000.00 to Delmar, who transferred a total of $29,985.00 to ETMO.

614.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Delmar of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Delmar.

615.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

616.    The transfer to Delmar was fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

617.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Delmar, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Delmar and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

618.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

619.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfer to Delmar.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Armand Delmar all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 54 - Unjust Enrichment
### (Against Armand Delmar)

620.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

621.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 52 and 53 do not provide an adequate remedy at law.

622.    Through the transfers to Delmar, the Receivership Entities conferred a substantial benefit on Delmar.

623.    Delmar knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

624.    Delmar's retention of this benefit is inequitable and unjust because, *inter alia*, Delmar failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

625.    Allowing Delmar to retain the transfer would unjustly enrich Delmar to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

626.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Armand Delmar all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 55 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Ahmad Naqvi)

627.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

628.    This is a claim to avoid and recover fraudulent transfers to and for the benefit of Naqvi pursuant to Section 726.105, Florida Statutes.

629.    ETIA transferred a total of $46,785.00 to Naqvi.

630.    By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Naqvi of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Naqvi.

631.    In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

632.    The transfers to Naqvi were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Naqvi because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

633.    The transfers to Naqvi were fraudulent under Florida Statutes § 726.105(1)(a) because ETIA made the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

634.    The transfers to Naqvi ere also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

635.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Naqvi, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Naqvi and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

636.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

637.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Naqvi.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Ahmad Naqvi for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

**COUNT 56 - Fraudulent Transfer under Section 726.106, Florida Statutes**
**(Against Ahmad Naqvi)**

638.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

639.    This is a claim to avoid and recover fraudulent transfers to Naqvi pursuant to Section 726.106, Florida Statutes.

640.    ETIA transferred a total of $46,785.00 to Naqvi.

641.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Naqvi of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Naqvi.

642.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

643.    The transfers to Naqvi were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfers and Elm and the Receivership Entities were insolvent at all relevant times.

644.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Naqvi, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Naqvi and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

645.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

646.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Naqvi.

76

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Ahmad Naqvi all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 57 - Unjust Enrichment
### (Against Ahmad Naqvi)

647.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

648.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 55 and 56 do not provide an adequate remedy at law.

649.    Through the transfers to Naqvi, the Receivership Entities conferred a substantial benefit on Naqvi.

650.    Naqvi knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

651.    Naqvi's retention of this benefit is inequitable and unjust because, *inter alia*, Naqvi failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

652.    Allowing Naqvi to retain the transfer would unjustly enrich Naqvi to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

653.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Ahmad Naqvi all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 58 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Mercedes Elmaleh)

654.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

655.     This is a claim to avoid and recover fraudulent transfers to and for the benefit of Mercedes Elmaleh pursuant to Section 726.105, Florida Statutes.

656.     The Elms and ETIA transferred a total of $43,275.87 to Mercedes Elmaleh.

657.     By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Mercedes Elmaleh of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Mercedes Elmaleh.

658.     In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

659.     The transfers to Mercedes Elmaleh were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Mercedes Elmaleh because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

660.     The transfers to Mercedes Elmaleh were fraudulent under Florida Statutes § 726.105(1)(a) because the Elms and ETIA made the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

661.     The transfers to Mercedes Elmaleh were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because the Elms and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

662.     On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Mercedes Elmaleh, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Mercedes Elmaleh and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

663.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

664.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Mercedes Elmaleh.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Mercedes Elmaleh for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

**COUNT 59 - Fraudulent Transfer under Section 726.106, Florida Statutes**
**(Against Mercedes Elmaleh)**

665.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

666.    This is a claim to avoid and recover fraudulent transfers to Mercedes Elmaleh pursuant to Section 726.106, Florida Statutes.

667.    The Elms and ETIA transferred a total of $43,275.87 to Mercedes Elmaleh.

668.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Mercedes Elmaleh of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Mercedes Elmaleh.

669.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

670.    The transfers to Mercedes Elmaleh were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfers and Elm and the Receivership Entities were insolvent at all relevant times.

671.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Mercedes Elmaleh, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Mercedes Elmaleh and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

672.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

673.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Mercedes Elmaleh.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Mercedes Elmaleh all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 60 - Unjust Enrichment
### (Against Mercedes Elmaleh)

674.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

675.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 58 and 59 do not provide an adequate remedy at law.

676.    Through the transfers to Mercedes Elmaleh, the Receivership Entities conferred a substantial benefit on Mercedes Elmaleh.

677.    Mercedes Elmaleh knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

678.    Mercedes Elmaleh's retention of this benefit is inequitable and unjust because, *inter alia*, Naqvi failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

679.    Allowing Mercedes Elmaleh to retain the transfer would unjustly enrich Mercedes Elmaleh to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

680.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Mercedes Elmaleh all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 61 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Elia Blumin)

681.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

682.     This is a claim to avoid and recover fraudulent transfers to and for the benefit of Blumin pursuant to Section 726.105, Florida Statutes.

683.     The Elms and ETIA transferred a total of $91,891.84 to Blumin.

684.     By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Blumin of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Blumin.

685.     In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

686.     The transfers to Blumin were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Blumin because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

687.     The transfers to Blumin were fraudulent under Florida Statutes § 726.105(1)(a) because the Elms and ETIA made the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

688.     The transfers to Blumin were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because the Elms and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

689.     On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Blumin, the Receiver is entitled to avoid and recover transfers equal to the

amount of the transfers that Elm caused Blumin and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

690.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

691.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Blumin.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Elia Blumin for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 62 - Fraudulent Transfer under Section 726.106, Florida Statutes
### (Against Elia Blumin)

692.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

693.    This is a claim to avoid and recover fraudulent transfers to Blumin pursuant to Section 726.106, Florida Statutes.

694.    The Elms and ETIA transferred a total of $91,891.84 to Blumin.

695.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Blumin of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Blumin.

696.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

697.    The transfers to Blumin were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfers and the Elms and the Receivership Entities were insolvent at all relevant times.

698.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Blumin, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Blumin and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

699.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

700.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Blumin.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Elia Blumin all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 63 - Unjust Enrichment
### (Against Elia Blumin)

701.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

702.    This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 61 and 62 do not provide an adequate remedy at law.

703.    Through the transfers to Blumin, the Receivership Entities conferred a substantial benefit on Blumin.

704.    Blumin knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

705.    Blumin's retention of this benefit is inequitable and unjust because, *inter alia*, Blumin failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

706.    Allowing Blumin to retain the transfer would unjustly enrich Blumin to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

707.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Elia Blumin all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 64 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Ted Greenwald)

708.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

709.     This is a claim to avoid and recover fraudulent transfers to and for the benefit of Greenwald pursuant to Section 726.105, Florida Statutes.

710.     ETMO transferred a total of $110,000.00 to Greenwald.

711.     By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Greenwald of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Greenwald.

712.     In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

713.     The transfers to Greenwald were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Greenwald because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

714.     The transfers to Greenwald were fraudulent under Florida Statutes § 726.105(1)(a) because the Elms and ETIA made the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

715.     The transfers to Greenwald were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because the Elms and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

716.     On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Greenwald, the Receiver is entitled to avoid and recover transfers equal to the

amount of the transfers that Elm caused Greenwald and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

717.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

718.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Greenwald.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Ted Greenwald for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 65 - Fraudulent Transfer under Section 726.106, Florida Statutes
**(Against Ted Greenwald)**

719.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

720.    This is a claim to avoid and recover fraudulent transfers to Greenwald pursuant to Section 726.106, Florida Statutes.

721.    ETMO transferred a total of $110,000.00 to Greenwald.

722.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Greenwald of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Greenwald.

723.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

724.    The transfers to Greenwald were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfers and the Elms and the Receivership Entities were insolvent at all relevant times.

725.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Greenwald, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Greenwald and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

726.     On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

727.     The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Greenwald.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Ted Greenwald all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 66 - Unjust Enrichment
### (Against Ted Greenwald)

728.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

729.     This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 64 and 65 do not provide an adequate remedy at law.

730.     Through the transfers to Greenwald, the Receivership Entities conferred a substantial benefit on Greenwald.

731.     Greenwald knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

732.     Greenwald's retention of this benefit is inequitable and unjust because, *inter alia*, Greenwald failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

733.     Allowing Greenwald to retain the transfer would unjustly enrich Greenwald to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

734.     Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Ted Greenwald all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 67 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Alina Talsky)

735.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

736.     This is a claim to avoid and recover fraudulent transfers to and for the benefit of Talsky pursuant to Section 726.105, Florida Statutes.

737.     Receivership Entities  transferred a total of $20,000.00 to Talsky.

738.     By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Talsky of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Talsky.

739.     In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

740.     The transfers to Talsky were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Talsky because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

741.     The transfers to Talsky were fraudulent under Florida Statutes § 726.105(1)(a) because the Elms and ETIA made the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

742.     The transfers to Talsky were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because the Elms and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

743.     On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Talsky, the Receiver is entitled to avoid and recover transfers equal to the

amount of the transfers that Elm caused Talsky and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

744.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

745.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Talsky.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Alina Talsky for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 68 - Fraudulent Transfer under Section 726.106, Florida Statutes
### (Against Alina Talsky)

746.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

747.    This is a claim to avoid and recover fraudulent transfers to Talsky pursuant to Section 726.106, Florida Statutes.

748.    Receivership Entities  transferred a total of $20,000.00 to Talsky.

749.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Talsky of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Talsky.

750.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

751.    The transfers to Talsky were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfers and the Elms and the Receivership Entities were insolvent at all relevant times.

752.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Talsky, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Talsky and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

753.     On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

754.     The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Talsky.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Alina Talsky all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

**COUNT 69 - Unjust Enrichment**
**(Against Alina Talsky)**

755.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

756.     This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 67 and 68 do not provide an adequate remedy at law.

757.     Through the transfers to Talsky, the Receivership Entities conferred a substantial benefit on Talsky.

758.     Talsky knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

759.     Talsky's retention of this benefit is inequitable and unjust because, *inter alia*, Talsky failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

760.     Allowing Talsky to retain the transfer would unjustly enrich Talsky to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

761.     Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Alina Talsky all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 70 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Elvis Pervan)

762.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

763.     This is a claim to avoid and recover fraudulent transfers to and for the benefit of Talsky pursuant to Section 726.105, Florida Statutes.

764.     The Elms transferred a total of $23,265.52 to Pervan.

765.     By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Pervan of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Pervan.

766.     In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

767.     The transfers to Pervan were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Pervan because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

768.     The transfers to Pervan were fraudulent under Florida Statutes § 726.105(1)(a) because the Elms and ETIA made the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

769.     The transfers to Pervan were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because the Elms and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

770.     On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Pervan, the Receiver is entitled to avoid and recover transfers equal to the

amount of the transfers that Elm caused Pervan and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

771.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

772.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Pervan.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Elvis Pervan for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 71 - Fraudulent Transfer under Section 726.106, Florida Statutes
### (Against Elvis Pervan)

773.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

774.    This is a claim to avoid and recover fraudulent transfers to Pervan pursuant to Section 726.106, Florida Statutes.

775.    The Elms transferred a total of $23,265.52 to Pervan.

776.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Pervan of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Pervan.

777.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

778.    The transfers to Pervan were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfers and the Elms and the Receivership Entities were insolvent at all relevant times.

779.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Pervan, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Pervan and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

780.     On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

781.     The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Pervan.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Elvis Pervan all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 72 - Unjust Enrichment
### (Against Elvis Pervan)

782.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

783.     This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 70 and 71 do not provide an adequate remedy at law.

784.     Through the transfers to Pervan, the Receivership Entities conferred a substantial benefit on Pervan.

785.     Pervan knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

786.     Pervan's retention of this benefit is inequitable and unjust because, *inter alia*, Pervan failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

787.     Allowing Pervan to retain the transfer would unjustly enrich Pervan to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

788.     Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Elvis Pervan all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 73 - Fraudulent Transfer under Section 726.105, Florida Statutes
### (Against Angelo Ismirnioglou)

789.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

790.     This is a claim to avoid and recover fraudulent transfers to and for the benefit of Ismirnioglou pursuant to Section 726.105, Florida Statutes.

791.     The Elms and ETIA transferred a total of $53,800.00 to Ismirnioglou.

792.     By the Elms and ETIA intentionally and wrongfully causing the transfer of funds to and for the benefit of Ismirnioglou of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Ismirnioglou.

793.     In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

794.     The transfers to Ismirnioglou were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Ismirnioglou because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

795.     The transfers to Ismirnioglou were fraudulent under Florida Statutes § 726.105(1)(a) because the Elms and ETIA made the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

796.     The transfers to Ismirnioglou were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because the Elms and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

797.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Ismirnioglou, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Ismirnioglou and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

798.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

799.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Ismirnioglou.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Angelo Ismirnioglou for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 74 - Fraudulent Transfer under Section 726.106, Florida Statutes
**(Against Angelo Ismirnioglou)**

800.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

801.    This is a claim to avoid and recover fraudulent transfers to Ismirnioglou pursuant to Section 726.106, Florida Statutes.

802.    The Elms and ETIA transferred a total of $53,800.00 to Ismirnioglou.

803.    By the Elms and ETIA intentionally and wrongfully causing the transfers to and for the benefit of Ismirnioglou of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Ismirnioglou.

804.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

805.    The transfers to Ismirnioglou were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfers and the Elms and the Receivership Entities were insolvent at all relevant times.

806.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Ismirnioglou, directly or indirectly, the Receiver is entitled to avoid and

recover transfers equal to the amount of the transfers that Elm caused Ismirnioglou and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

807.   On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

808.   The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Ismirnioglou.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Angelo Ismirnioglou all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 75 - Unjust Enrichment
### (Against Angelo Ismirnioglou)

809.   Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

810.   This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 73 and 74 do not provide an adequate remedy at law.

811.   Through the transfers to Ismirnioglou, the Receivership Entities conferred a substantial benefit on Ismirnioglou.

812.   Ismirnioglou knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

813.   Ismirnioglou's retention of this benefit is inequitable and unjust because, *inter alia*, Ismirnioglou failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

814.   Allowing Ismirnioglou to retain the transfer would unjustly enrich Ismirnioglou to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

815.   Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Angelo Ismirnioglou all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 76 - Fraudulent Transfer under Section 726.105, Florida Statutes
**(Against Jonathan Verk)**

816.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

817.    This is a claim to avoid and recover fraudulent transfers to and for the benefit of Verk pursuant to Section 726.105, Florida Statutes.

818.    ETIA transferred a total of $157,528.76 to Verk, who transferred a total of $150,000.00 to ETEF.

819.    By Elm intentionally and wrongfully causing the transfer of funds to and for the benefit of Verk of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Verk.

820.    In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

821.    The transfer to Verk was inherently fraudulent because it was made as part of Elm's Fraudulent Scheme.  The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused to be made to Verk because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

822.    The transfer to Verk was fraudulent under Florida Statutes § 726.105(1)(a) because ETIA made the transfer with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

823.    The transfer to Verk was also fraudulent under Florida Statutes § 726.105(1)(b) because the transfer was made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur,

or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

824.    On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Verk, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Verk and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

825.    On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

826.    The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfers to Verk.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Jonathan Verk for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

### COUNT 77 - Fraudulent Transfer under Section 726.106, Florida Statutes
**(Against Jonathan Verk)**

827.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

828.    This is a claim to avoid and recover fraudulent transfers to Verk pursuant to Section 726.106, Florida Statutes.

829.    ETIA transferred a total of $157,528.76 to Verk, who transferred a total of $150,000.00 to ETEF.

830.    By Elm intentionally and wrongfully causing the transfers to and for the benefit of Verk of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Verk.

831.    In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act.  Accordingly, Elm is a debtor under that act.

832.    The transfer to Verk was fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in

exchange for the transfer and Elm and the Receivership Entities were insolvent at all relevant times.

833.   On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Verk, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfer that Elm caused Verk and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

834.   On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover the transfer because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

835.   The Receivership Estate has been damaged and diminished as a direct and proximate result of the transfer to Verk.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Jonathan Verk for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT 78 - Unjust Enrichment
### (Against Jonathan Verk)

836.   Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-140, as if fully stated herein.

837.   This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts 76 and 77 do not provide an adequate remedy at law.

838.   Through the transfers to Verk, the Receivership Entities conferred a substantial benefit on Verk.

839.   Verk knowingly and voluntarily accepted and retained a benefit in the form of the transfer.

840.   Verk's retention of this benefit is inequitable and unjust because, *inter alia*, Verk failed to provide anything of value to the Receivership Entities in exchange for the benefit, the transfer was made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the transfer dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

841.    Allowing Verk to retain the transfer would unjustly enrich Verk to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

842.    Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Jonathan Verk for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.


Dated November 1, 2016

Respectfully submitted,

**BROAD AND CASSEL**
Attorneys for Receiver
2 South Biscayne Boulevard, 21st Floor
Miami, FL 33131
Tel: (305) 373-9400
Fax: (305) 373-9443

By:    *s/Daniel S. Newman*
Daniel S. Newman, P.A.
Florida Bar No. 0962767
dnewman@broadandcassel.com
Christopher Cavallo, Esq.
Florida Bar No. 0092305
ccavallo@broadandcassel.com